UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES A. BENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 1:16-CV-362 WL |
| v. | ) |
| | ) |
| ALLEN COUNTY JAIL, *et. al.*, | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

Charles A. Benson, a *pro se* prisoner, filed an amended complaint. ECF 19. Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Courts apply the same standard under Section 1915A as when deciding a motion under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 603. In deciding whether the complaint states a claim, the court must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Benson complains about a number of events that took place while he was incarcerated at the

1

Allen County Jail as a pretrial detainee. Because Benson was a pretrial detainee at the time of these events, the Fourteenth rather than the Eighth Amendment applies. *Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009). The governing standards are functionally equivalent, and "anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment." *Id*. "In evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Deprivations must be "unquestioned and serious" and deprive prisoner of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Inmates are entitled to adequate food, clothing, shelter, medical care, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

First, Benson complains that on May 8, 2016, five officers dressed in S.O.R.T. gear removed him from his cell and placed him on "suicide watch" for three days which included being placed in segregation with restrictive conditions. Because Benson is a pretrial detainee, he may not be punished without due process of law. *Bell*, 441 U.S. at 520. However, not every placement of a pretrial detainee in segregation constitutes punishment, and when done for legitimate security reasons such placements do not violate due process. *Zarnes v. Rhodes*, 64 F.3d 285, 291 n.5 (7th Cir. 1995), *see also Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002). Here, Benson explains that he was placed in segregation because he was being placed on suicide watch. The officers were not punishing him. They believed he was a threat to himself. Thus, his placement in segregation for three days does not state a constitutional violation.

Benson also complains of the conditions of his confinement while he was on suicide watch

for three days. He alleges the lights were left on for 24 hours a day, he was only allowed to shower one time and he was not permitted to visit with his attorney. "When an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013). Since Benson was on suicide watch, it is a safer practice to leave the lights on in his cell. *Taylor v. Wausau Underwriters Ins. Co.*, 423 F.Supp. 2d, 882, 896-97 (E.D. Wisc. 2006). And, even if the lights being left on for three days was unpleasant, that is too short of a time period to implicate Benson's liberty interest. *Earl*, 718 F.3d at 691 (collecting cases). Furthermore, while not being permitted to shower everyday may violate jail policy, it does not violate the constitution. Being allowed to shower one time in three days does not state a claim. *Hardaway v. Meyerhoff*, 734 F.3d 740 (7th Cir. 2013). And, while he complains that his interaction with his attorney was restricted for these three days, that does not amount to a Sixth Amendment violation. A finding that Benson was denied his right to access to counsel would inherently undermine his conviction. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002). Thus, this claim is not cognizable in a civil rights action until after his conviction is first overturned in a habeas proceeding. *Heck v. Humphrey*, 512 U.S. 477 (1994). Based on the current complaint, the court cannot plausibly infer that being placed on suicide watch under these conditions for three days states a claim. *See Mathews v. Raemisch*, 513 Fed. Appx. 605 (7th Cir. 2013).

Next, Benson alleges that Sgt. Knox, Wacsey, Myers, Webber, Hinsey, Lt. Purden and Charles Hart came to his cell dressed in S.O.R.T. gear on May 13, 2016. While they were there, Lt.

3

Purden verbally harassed him. However, verbal harassment, though despicable, does not trigger any constitutional protections. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[S]imple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prison equal protection of the laws."). Benson claims that, while he was complying with their orders, Wacsey held him while Myers pressed a riot shield against his back, causing Benson's nose to be pressed against the barred door, breaking his nose. ECF 19 at 3.

Benson alleges that it was an excessive use of force for Myers and Wacsey to have broken his nose during the cell extraction. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* Though the evidence may ultimately show that this was not an excessive use of force, it is a plausible allegation that these two officers used excessive force against him and he will be granted leave to proceed on this claim.

Next, Benson brings suit against the rest of the officers present during his cell extraction. He does not allege that any of them harmed him. Thus, Benson seemingly claims that they failed to intervene in Myers' and Wacsey's use of excessive force against him on May 13, 2016. State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir.1994). Here, however, there is no indication that any of the officers present during the cell extraction had

4

any realistic opportunity to prevent the other two officers from using excessive force. Instead, it appears as though they were merely present while Benson was restrained and extracted from his cell, which seemingly happened in an instance, not giving any officers any realistic opportunity to prevent Myers' or Wacsey's actions.

Finally, Benson filed a motion responding to the court's prior screening order. There is no need for Benson to file such a motion. It will be denied on that basis.

For these reasons, the court:

(1) **DENIES** the motion (ECF 20) responding to the screening order;

(2) **GRANTS** Charles A. Benson, leave to proceed against Allen County Jail Officers Meyers and Wacsey in their individual capacities for compensatory and punitive damages for using excessive force against him on May 13, 2016, in violation of the Fourteenth Amendment;

(3) **DISMISSES** all other claims;

(4) **DIRECTS** the clerk and the United States Marshals Service to issue and serve process on Officers Meyers and Wacsey with a copy of this order and the complaint as required by 28 U.S.C. § 1915(d); and

(5) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), Officers Meyers and Wacsey to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED: September 25, 2017

                                            s/William C. Lee  
                                            William C. Lee, Judge  
                                            United States District Court